**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

ZOE ROSE HAFT,

Plaintiff,

v. CASE NO.: ___________________

AKC3, LLC, d/b/a STAY THE SPA;
CAMERON SMITH; and
JENNIFER WALDEN-SMITH,

Defendants.
__________________________________/

# COMPLAINT

COMES NOW, the Plaintiff, ZOE ROSE HAFT (hereinafter referred to as "Plaintiff"), by and through the undersigned counsel, and sues AKC3, LLC d/b/a STAY THE SPA ("Stay the Spa"); CAMERON SMITH ("Mr. Smith"), and JENNIFER WALDON-SMITH ("Mrs. Smith"; hereinafter Stay the Spa, Mr. Smith and Mrs. Smith shall individually, interchangeably, and/or collectively be referred to as "Defendants"), and alleges:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. §§ 206, 207, and 216(b), which provides that suit under the Federal Labor Standards Act (hereinafter "FLSA") "may be maintained against any employer...in

any Federal or State court of competent jurisdiction."

2. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §1331.

3. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) as the Defendants are located and/or do business within this District. In addition, a substantial part of the events and omissions giving rise to the claims pleaded in this Complaint occurred within this District.

PARTIES

4. Plaintiff is a resident of the State of Florida and was an employee of the Defendants from October 2018 through September 2020.

5. Plaintiff worked for the Defendants performing multiple duties assigned to her by the Defendants and required by the Defendants at their property located in the Pensacola, Florida, area.

6. At all times material herein, Plaintiff was an employee of the Defendants within the meaning of the Act, 29 U.S.C. § 203(e)(1).

7. Defendant, Stay the Spa, is a Florida limited liability company duly licensed and organized under the laws of the State of Florida and is engaged in the business of, but not limited to, operating a full-service day spa.

8. Defendant, Mr. Smith, is a resident of the State of Florida and is listed as a title manager of Defendant, Stay the Spa.

9.     Defendant, Mrs. Smith, is a resident of the State of Florida and is listed as a title manager of Defendant, Stay the Spa.

10.     Defendants, at all times material, were an "employer" of the Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203(d).

## FACTUAL ALLEGATIONS

11.     The Defendant, Stay the Spa, is an employer and enterprise engaged in interstate commerce.

12.     The Defendant, Mr. Smith, is an employer and enterprise engaged in interstate commerce, because, without limitation, he exercises control over significant aspects of the Stay the Spa's day-to-day functions, including without limitation, compensation of employees.

13.     The Defendant, Mrs. Smith, is an employer and enterprise engaged in interstate commerce, because, she exercises control over significant aspects of the Stay the Spa's day-to-day functions, including without limitation, compensation of employees.

14.     The Defendant, Stay the Spa's, principal place of business is 240 S. Jefferson Street, Pensacola, FL 32502.

15.     The Defendants, as part of their business, would engage in interstate commerce by, but not limited to, processing credit cards which are instruments of interstate commerce, transacting business with foreign corporations which were part

of interstate commerce, purchasing products, furniture, equipment, materials, and supplies from dealers, wholesalers, suppliers, and retailers out of state which were part of interstate commerce, by advertising on the World Wide Web and other mediums to potential clients outside the State of Florida, and by transacting business across state lines, all of which are part of interstate commerce.

16.    Furthermore, the Defendants obtain, exchange, and send/receive funds to and from outside of the State of Florida, sells goods and products outside the State of Florida, use telephonic transmissions going outside of the State of Florida to conduct business, and transmit electronic information through computers, the Internet, via email, and otherwise outside of the State of Florida.

17.    The Defendant, Stay the Spa, has an annual revenue of at least five hundred thousand dollars ($500,000.00).

20.    The Defendants' operations, practices, policies and procedures including those with respect to compensation, are highly integrated and interdependent such that the Defendants constitute a single and/or joint employer under the law.

21.    The Defendants control the day to day operations of the day spa located at 240 S. Jefferson Street, Pensacola, FL 32502, and are actively involved in the day to day operations of same including matters concerning hiring, firing, payroll, setting policies, making procedures, setting goals and quotas, marketing, establishing

services to offer, setting product and services pricing, and other business operations.

22. The Defendants hired Plaintiff in or about October 2018 as an esthetician. The Plaintiff is no longer employed by the Defendants.

23. Along with working as an esthetician, the Plaintiff also worked in the Defendants' full day service spa, boutique shop, worked on location for weddings, attended meetings, trained other employees, attended training of product representatives, and sold goods and products.

24. The Defendants facilities were open to the public.

25. At all times material herein, the Defendants, controlled the Plaintiff's day to day activities, supervised, and/or had operational control over the Plaintiff. The Defendants were responsible for hiring the Plaintiff, having the ability to terminate the Plaintiff, setting the Plaintiff's rate of pay, determining if minimum wage or overtime was to be paid, determining if commission(s) were to be paid, setting the Plaintiff's work schedule including the number of days and hours worked, determining and assigning the Plaintiff's work duties, and supervising the Plaintiff.

26. During her employment with the Defendants, the Defendants misclassified some of the Plaintiff's employment as an independent contractor. Specifically, some of her time was compensated as an employee and other parts of her time were classified incorrectly by the Defendants as an independent contractor.

27. In particular, when the Defendants hired the Plaintiff or about October 2018, the Defendants paid the Plaintiff as a non-exempt employee that received a W-2.

28. On or about July 16, 2019, the Defendants informed the Plaintiff that the Defendants wanted to provide her with a "special offer" that was only available to "select employees" so she could "get more money in her paycheck" that would allow the Plaintiff to be paid more than she was paid previously as a non-exempt employee that received a W-2.

29. Unbeknownst to the Plaintiff, the Defendants' had an ulterior, sinister motive and the "special offer" was just to misclassify the Plaintiff as an independent contractor for the Defendants' sole and exclusive benefit.

30. The Defendants desired to misclassify the Plaintiff as an independent contractor to purposefully escape payroll taxes and unemployment taxes such as FICA, SUTA, and other applicable payroll taxes.

31. Commencing on or about July 16, 2019, the Defendants began compensating the Plaintiff as an independent contractor.

32. Despite the Defendants changing the Plaintiff's employment status from a non-exempt employee that received a W-2 to an independent contractor on or around July 16, 2019, the Plaintiff's job duties, functions, and responsibilities remained the same.

33.     At all times during the period the Plaintiff has worked for the Defendants, the Defendants have exercised control over her.

34.     At all times during the period Plaintiff worked for the Defendants, the relationship with the parties were permanent in nature.

35.     At all times during the period Plaintiff worked for the Defendants, the Plaintiff was economically dependent on the Defendants.

36.     At all times during the period Plaintiff worked for the Defendants, the Plaintiff's job duties performed were an integral part of the Defendants' business.

37.     The Plaintiff was a "non-exempt" employee of the Defendants.

38.     The Plaintiff was not a salaried employee.

39.     The Plaintiff worked the number of hours required of her by the Defendants, but was not properly paid for each and every hour worked during a work week.

40.     The Defendants permitted the Plaintiff to work for them but did not properly pay her for all work that she performed for the Defendants.

41.     The Plaintiff worked over forty (40) hours in a work week for the Defendants, but was not paid overtime compensation at the proper overtime rate by the Defendants for those hours worked over forty (40) in a work week.

42.     The Plaintiff worked for the Defendants, but was not paid any wages as compensation for Plaintiff completing mandatory training, meetings, training other

employees, trainings with product representatives, cleaning, sweeping, and sanitizing the Defendants' premises, all as demanded by the Defendants.

43. The Defendants were directly involved with paying the Plaintiff.

44. The records concerning the hours worked by the Plaintiff are in the exclusive possession and sole custody and control of the Defendants. Therefore, the Plaintiff is unable to determine and state the exact amount of damages due.

45. The Defendants' actions in failing and/or refusing to pay the Plaintiff the applicable minimum wage and/or overtime compensation, as required by the FLSA, were willful and not in good faith.

46. Plaintiff has retained the undersigned attorneys and is obligated to pay them a reasonable fee for their services pursuant to the FLSA.

**COUNT I — FAILURE TO PAY OVERTIME UNDER THE FLSA**

47. Plaintiff re-alleges paragraphs 1 – 46 above as if fully set forth herein.

48. The Defendants hired Plaintiff in or about October 2018 to work for them at their location in the Pensacola, Florida area.

49. During her time as an employee of the Defendants, the Plaintiff worked as and performed the essential duties of her job including, but not limited to as an esthetician. She was also required to work at the full day service spa, boutique shop, worked on location for weddings, attended meetings, trained other employees, attended training of product representatives, and sold goods and products

and other merchandise in the Defendants' full day service spa and boutique shop.

50. On average, the Plaintiff worked over forty (40) hours in a work week for the Defendants performing all of the job duties of an esthetician, and her other job duties.

51. The Plaintiff estimates, that in many weeks during her employment with the Defendants, she worked well in excess of forty (40) hours per week.

52. Section 207(a)(1) of the FLSA prohibits an employer from employing its non-exempt employees for a work week longer than forty (40) hours, unless such employee receives compensation for all hours he or she is employed in excess of forty hours at a rate not less than one and one-half times the regular rate of pay.

53. The Plaintiff was not exempt from receiving overtime compensation under the FLSA.

54. As such, Plaintiff was entitled to be paid at a rate one and one-half (1 $^1/_2$) times her regular hourly rate for each hour worked in excess of forty (40) in a work week.

55. The Defendants employed Plaintiff in excess of forty (40) hours in at least one work week without paying her at a rate of one and one half (1 $^1/_2$) times her regular rate of pay for all hours worked in excess of forty (40) in the work week as required by the FLSA, and thus have violated the Plaintiffs rights under § 207 of the FLSA.

56. As a consequence of the Defendants violation of the FLSA, the Plaintiff is entitled to one and one half (1 $^{1}/_{2}$) times her regular rate of pay for all hours she worked in excess of 40 hours for each week she was employed by the Defendants and for which she was not paid one and one half times (1 $^{1}/_{2}$) her regular rate.

57. Defendants knew and were aware at all times that Plaintiff worked more than forty (40) hours per week without receiving the appropriate overtime compensation.

58. Defendants failed and refused to properly compensate Plaintiff at the proper overtime rate for each hour worked in excess of forty (40) in a work week.

59. The Defendants knew, or showed reckless disregard for the fact, that their failure to pay the Plaintiff as alleged herein was in violation of the FLSA.

60. The actions of the Defendants complained of herein were willful within the meaning of 29 U.S.C. § 216(b).

61. Because of Defendants' actions, Plaintiff has had to retain counsel and is entitled to recover her attorneys' fees and costs connected with this suit.

62. As a result of the unlawful acts of the Defendants, Plaintiff has been deprived of overtime compensation in amounts to be determined at trial, and is entitled to recovery of such amounts, liquidated damages, attorneys' fees, costs and other compensation.

**WHEREFORE,** the Plaintiff prays that this Honorable Court:

A. Enter judgment for the Plaintiff and against the Defendants on the basis of Defendants' willful violations of the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. §207, as to the Plaintiff;

B. Award Plaintiff actual and compensatory damages in the amount shown to be due for unpaid overtime compensation;

C. Award Plaintiff an equal amount in liquidated damages;

D. Award Plaintiff reasonable attorney's fees and costs of suit;

E. Enter a declaration that the Plaintiff's employment as an esthetician is not exempt from receiving overtime compensation under the FLSA;

F. Enter a judgment according to the declaratory relief sought; and

G. Grant such other and further relief as this Court deems equitable and just.

**COUNT II — VIOLATION OF 26 U.S.C. § 7434**

63. Plaintiff re-alleges paragraphs 1 – 46 above as if fully set forth herein.

64. The Defendants hired Plaintiff in or about October 2018 as an esthetician.

65. At all times herein, Plaintiff worked for the Defendants as an esthetician and in Defendants' full-service day spa and boutique salon.

66.    The Plaintiff's job duties as an esthetician included, but were not limited
to work for the Defendants in their full day service spa and boutique shop and
providing clients with services typically provided by estheticians including without
limitation, makeup, tanning, and waxing.

67.    The Plaintiff was also required to work on location for weddings, attend
meetings, train other employees, attend training of product representatives, and sell
goods and products.

68.    Prior to July 16, 2019, the Plaintiff was paid via a W-2 for all work
performed as an esthetician, including working in their full day service spa and
boutique shop and providing clients with services typically provided by
estheticians, including without limitation, makeup, tanning, and waxing.

69.    On or about July 16, 2019, the Defendants informed the Plaintiff that
the Defendants wanted to provide her with a "special offer" that was only available
to "select employees" so she could "get more money in her paycheck" that would
allow the Plaintiff to be paid more than she was paid previously as a non-exempt
employee that received a W-2.

70.    Unbeknownst to the Plaintiff, the Defendants' "special offer" was just
to misclassify the Plaintiff as an independent contractor for the Defendants' sole and
exclusive benefit.

71.    Commencing on or about July 16, 2019, the Defendants began

compensating the Plaintiff as an independent contractor.

72. Despite the Defendants changing the Plaintiff's employment status from a non-exempt employee that received a W-2 to an independent contractor on or around July 16, 2019, the Plaintiff's job duties, functions, and responsibilities remained the same.

73. The Defendants issued the Plaintiff a 1099 for the Plaintiff's income earned while employed as an esthetician by the Defendants for July 16, 2019 through December 31, 2019 and a W-2 for income earned while employed as an esthetician by the Defendants for 2018 and from January 2019 through July 15, 2019.

74. The Defendants continued to misclassify and improperly treat the Plaintiff as an independent contractor from July 16, 2019 until her employment with Defendants was terminated.

75. During Plaintiffs employment with the Defendants, she was always an employee of the Defendants:

a. At all times herein, the Plaintiffs tanning, waxing, and makeup appointments for Defendants' customers were set/scheduled through Defendants' online system and paid through the Defendants' point of sale system.

b. At all times herein, the Plaintiff did not have her own private business.

c.  At all times herein, the Plaintiff was required to work in any and all clinics and events hosted by the Defendants or otherwise held on Defendants' premises without additional pay.

d.  At all times herein, the Plaintiff could not work for another facility and was unable to work for other employers/provide esthetician services at any facility other than the Defendants' facility.

e.  At all times herein, the Plaintiff was unable to personally set the rates of pay for her tanning, waxing, and makeup appointments for Defendants' customers.

f.  At all times herein, the Plaintiff's compensation for her tanning, waxing, and makeup appointments for Defendants' customers was provided by and set by the Defendants.

g.  At all times herein, the Plaintiff was unable to provide any esthetician services including without limitation, tanning, waxing, and makeup appointments for customers other than for Defendants' customers.

h.  At all times herein, the Plaintiff was required to work in Defendants' full day service spa and boutique shop and sell Defendants' products and goods.

i.   At all times herein, the Plaintiff was required to attend company employee meetings, train other employees, and attend trainings by product representatives.

j.   At all times herein, the Plaintiff was required to provide services on behalf of the Defendants on location at weddings.

k.   At all times herein, the Plaintiff's work in Defendants' full day service spa and boutique shop facilitated and supported her work as an esthetician.

j.   At all times herein, the Defendants exercised control over the Plaintiff's work activities, including Plaintiff's work providing esthetician services, requiring the Plaintiff to clean, sweep, and sanitize the Defendants' facilities without compensation.

k.   At all times herein, the Plaintiff was economically dependent on the Defendants.

1.   At all times herein, the Plaintiff's job duties performed were an integral part of the Defendant's business.

76.   Defendants had full knowledge that Plaintiff worked in excess of forty (40) hours per week during certain weeks in the years of 2018, 2019, and 2020.

77.   The Defendants had full knowledge that the Plaintiff was not an independent contractor and should have been provided a W-2 for her services

performed for the Defendants during the calendar years of 2019 and 2020.

78. By failing and refusing to provide Plaintiff with a W-2 for all her services performed for the Defendants in 2019 and failing to accurately reflect overtime wages which Plaintiff should have received during the calendar year of 2018 and 2019, the Defendants caused the Plaintiff to be issued an inaccurate and incorrect W-2 in 2018, and inaccurate and incorrect W-2 for January 1, 2019 through approximately July 15, 2019, and an inaccurate and incorrect 1099 for July 16, 2019 through December 2019.

79. Additionally, by failing and refusing to provide Plaintiff with a W-2 for her services performed for the Defendants in 2019 and failing to accurately reflect overtime wages which Plaintiff should have received during the calendar years of 2018 and 2019, the Defendant failed to appropriate, pay, or otherwise provide the Florida Department of Revenue with the appropriate payroll taxes that needed to be paid, including federal and state employment taxes.

80. From on or about 2018 to the present, Defendants facilitated or caused incorrect W-2's and 1099’s to be filed, and incorrect state wage forms that were reported to the Florida Department of Revenue.

81. Defendants knew or should have known that the Plaintiff was not an independent contractor because of the treatment provided to her from the years prior to July 16, 2019, and because the Plaintiff was economically dependent on the

Defendants as noted above/would not qualify as an independent contractor under the law.

82. Defendants misclassified Plaintiff's income earned as an independent contractor and refused to provide Plaintiff with a W-2 for all work performed in 2019 to purposefully escape payroll taxes and unemployment taxes such as FICA, SUTA, and other applicable payroll taxes.

83. Defendants never received nor sought any legal or professional advice before naming the Plaintiff a 1099 independent contractor in 2019.

84. Defendants had an obligation to provide correct information returns to the IRS, State of Florida, and the State of Florida Department of Revenue.

85. Section 7434 of 26 U.S.C. provides, in pertinent part, as follows:

> **(a) In general**
> If any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return.

86. Defendants provided paychecks to Plaintiff and were directly responsible for the issuance of paychecks to Plaintiff, calculation of withholdings from Plaintiff's pay, the payment of taxes to the IRS, the preparation of their annual income tax returns, the preparation and filing of Form 941's, and the filing of information returns on their own behalf as noted above.

87. Plaintiff's W-2s for the 2018 and 2019 calendar year misstated

the Plaintiff's income and misrepresented the amount of income earned by the Plaintiff during her work with Defendants.

88. Defendants were aware and/or knew or should have known that all of Plaintiff’s services for Defendants should have been included on a W-2; however, Defendants willfully provided Plaintiff with incorrect W-2s and 1099s in order to avoid paying the required employment taxes on her behalf.

89. Defendants served/filed or caused to be served/filed a knowingly misleading false annual tax W-2 for the year of 2018 by failing to pay and report overtime wages and for the year of 2019 by misclassifying Plaintiff's work as an independent contractor rather than as an employee, and then failing to properly identify her as an employee and pay the required employment taxes on her behalf.

90. Defendants served/filed or caused to be served/filed knowingly false IRS Form 941 quarterly tax returns in or about 2019 and 2020 by failing to include Plaintiff's income as an employee.

91. Defendants acted willfully to issue or cause to be issued an incorrect and inappropriate IRS information return to Plaintiff so as to avoid paying the employer share of FICA and related employer tax withholdings.

92. Plaintiff suffered damages as a result of Defendants’ willful provision of false information returns, including the overpayment of taxes as an independent contractor, the failure to receive the required contribution to her

taxes by her employers, the lack of a contribution to social security, and the like, as a result of Defendants' intentional and willful acts as described above.

**WHEREFORE** Plaintiff demands the entry of a judgment in her favor and against Defendants, jointly and severally, after trial by jury and as follows:

A. That Plaintiff recover the greater of $5,000 for each fraudulent information return filed by Defendants for each year during the past three (3) years or the damages proximately caused by Defendants' conduct for each year during the past three (3) years, including any and all damages following the filing of this Complaint;

B. That Plaintiff recover an award of reasonable attorney's fees, costs, and expenses pursuant to 26 U.S.C. §7434;

C. That Plaintiff recover all interest allowed by law; and

D. Grant such other and further relief as this Court deems equitable and just.

**COUNT III — FAILURE TO PAY MINIMUM WAGE UNDER THE FLSA**

93. Plaintiff re-alleges paragraphs 1 – 46 above as if fully set forth herein.

94. The Defendants hired Plaintiff in or about October 2018 to work for them at their location in the Pensacola, Florida area.

95. During her time as an employee of the Defendants, the Plaintiff

worked as and performed the essential duties of her job including, but not limited to as an esthetician. She was also required to sell items and other merchandise in the Defendants' boutique salon.

96.     The Plaintiff was also required to work on location for weddings, attend meetings, train other employees, attend training of product representatives, and sell goods and products.

97.     Section 206 of the FLSA prohibits an employer from paying its employees less than $7.25 per hour.

98.     The Plaintiff was engaged in commerce or in the production of goods for commerce.

99.     The Defendants required that the Plaintiff complete mandatory training to provide esthetician services at Defendants' premises after Defendants employed the Plaintiff. The mandatory training included, but was not limited to company meetings and training by product representatives.

100.    The training occurred outside of the Plaintiff's normal work hours.

101.    The Plaintiff was unable to carry out productive work during this mandatory training.

102.    The Plaintiff was not compensated for time spent completing the Defendants' mandatory training.

103.    The Defendants also required that the Plaintiff clean, sweep, and/or

sanitize the Defendants' premises during her employment with the Defendants.

104.    The Defendants did not compensate the Plaintiff for her time spent working for the Defendant by cleaning, sweeping, and/or sanitizing the Defendants' premises during her employment with the Defendants.

105.    The Defendants were required to compensate the Plaintiff for her time spent performing the mandatory training and for the time spent working for the Defendant by cleaning, sweeping, and/or sanitizing the Defendants' premises during her employment with the Defendants.

106.    Defendants knew and were aware at all times that Plaintiff performed the mandatory training and cleaned, swept, and/or sanitized the Defendants' premises during her employment with the Defendants without receiving the appropriate compensation.

107.    Defendants failed and refused to properly compensate Plaintiff for each hour worked by the Plaintiff completing the mandatory training and cleaning, sweeping, and/or sanitizing the Defendants' premises, and working weddings on location during her employment with the Defendants.

108.    The Defendants knew, or showed reckless disregard for the fact, that their failure to pay the Plaintiff as alleged herein was in violation of the FLSA.

109.    The actions of the Defendants complained of herein were willful within the meaning of 29 U.S.C. § 216(b).

110.   Because of Defendants' actions, Plaintiff has had to retain counsel and is entitled to recover her attorneys' fees and costs connected with this suit.

111.   As a result of the unlawful acts of the Defendants, Plaintiff has been deprived of wages in amounts to be determined at trial, and is entitled to recovery of such amounts, liquidated damages, attorneys' fees, costs and other compensation.

**WHEREFORE,** the Plaintiff prays that this Honorable Court:

A.   Enter judgment for the Plaintiff and against the Defendants on the basis of Defendants' willful violations of the minimum wage provisions of the Fair Labor Standards Act, 29 U.S.C. §206, as to the Plaintiff;

B.   Award Plaintiff actual and compensatory damages in the amount shown to be due for unpaid compensation;

C.   Award Plaintiff an equal amount in liquidated damages;

D.   Award Plaintiff reasonable attorney's fees and costs of suit;

E.   Enter a declaration that the Plaintiff is entitled to be compensated minimum wage under the FLSA for all hours worked by the Plaintiff for the Defendants;

F.   Enter a judgment according to the declaratory relief sought; and

G.   Grant such other and further relief as this Court deems equitable

and just.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

DATED this 11th day of September, 2020.

CARVER, DARDEN, KORETZKY, TESSIER, FINN, BLOSSMAN & AREAUX LLC

By: */s/Robert S. Rushing*

Robert S. Rushing, Esquire
Florida Bar No.: 0013946
Travis M. Morock, Esquire
Florida Bar No.: 118823
151 West Main Street, Suite 200
Pensacola, Florida 32502
Telephone: (850) 266-2300
rushing@carverdarden.com
morock@carverdarden.com
Attorney for Plaintiff,
ZOE ROSE HAFT